DADE COUNTY, et al v. AMALGAMATED ASSOCIATION OF
STREET ELECTRIC RAILWAY AND MOTOR COACH
EMPLOYEES OF AMERICA, DIVISION 1267, et al.
No. 61-C-12832.

Circuit Court, Dade County.
January 4, 1962.

70

Darrey A. Davis, County Attorney, for plaintiffs.

Edward D. Cowart of Cowart, Dollar & Glassford, Miami, and Motzart Rattner, Washington, D. C., for defendants.

JOE EATON, Circuit Judge.

*Opinion:* Dade County contracted with the owner of a public utility to purchase the public utility, a bus system. The county contracted with a private "management company" to manage the system.

The bus drivers employed by the utility company at the time of the execution of the contract to purchase were and are members of a labor union which asserts the right to strike against the government.

The county brought a complaint for declaratory decree and, pursuant to the contract to purchase, gave notice to the seller of the "take over" of the system. The county seeks to have the court determine its rights, status, etc., under §839.221 Florida Statutes.

One of the prayers in the plaintiffs' complaint reads as follows —

"4. That the court will construe and apply the provisions of §839.221, Florida Statutes, in the light of the several agreements described herein and declare, determine, and adjudicate the rights, status, powers, duties, and responsibilities of the respective parties thereunder."

You can readily see that a declaratory decree rendered on that prayer cannot be concisely given. One cannot declare the rights that are fertile here for declaration without spending considerable time in doing so.

Those persons, gentlemen, who are superficially acquainted with the subject matter of this case are in position to treat it summarily. Prejudice for one side or the other is a great time saver. It allows one to reach a decision without the trouble of having to become completely acquainted with the facts and the law in the case; but the impartial person finds it almost unavoidable that the matter be belabored to a degree, because it is that complex, gentlemen.

Plaintiffs in this case sought injunctive relief and a declaratory decree. The prayer for injunctive relief has been withdrawn by the plaintiffs.

At the outset, it should be made clear that declaratory relief is available only when there is a present need for a declaration and that declaration may deal only with a present ascertainable state of fact. Such decree can be had only when there are those before the court who have an antagonistic interest in the subject matter, whether in law or in fact or both. In other words, there must be a bona fide dispute as to a present justiciable question in order to invoke declaratory relief.

The plaintiffs here are in genuine doubt as to their rights, status, immunity, power, or privilege in the subject matter, and they are entitled to have those doubts removed; but a seriously debatable jurisdictional question has been raised in this case. This court's decree, therefore, will be limited to a construction of that state statute which has been under such close scrutiny here (the court clearly has jurisdiction to do that) and to a resolution of such doubts presently entertained by the plaintiffs as may be resolved without invading the jurisdiction of the NLRB or the federal courts.

I shall not relate the facts of this case. They are well known to the parties. Suffice it to say, the parties here declared an armistice at a time subsequent to the filing of the complaint in the cause. There can be no armistice without controversy.

Further, the state of armistice is to prevail only until such time as this court renders its decree, which act is imminent. Whether or not the plaintiffs' notice of takeover of the bus systems was revoked by the plaintiffs' armistice agreement or whether it will be automatically revitalized by the entry of the court decree is not for me to decide. Such question is not before me. Neither is the party who has contracted to sell the bus system. But the recent giving of that notice by the plaintiffs makes this matter ripe for judicial declaratory decree. Such a decree will be rendered within the jurisdictional limitation already detailed.

What precisely are the doubts presently entertained by the plaintiffs?

Under the facts present, the plaintiffs are in a genuine quandary as to whether or not 839.221 of the Florida Statutes is applicable to such employees now working for the bus companies which it plans to take over who are members of the defendant union, which union asserts the right to strike against the county. The plaintiffs are not certain whether or not they may lawfully employ such union members. They are not certain whether or not they must offer such union members employment upon takeover. Indeed, they are in doubt as to whether or not such bus company employees will become entitled by operation of law to such benefits as may be said to flow to those in the county employment who are under civil service provisions. There is dispute as to whether or not the plaintiffs may be compelled to bargain collectively with the union upon takeover. The plaintiffs are in doubt as to whether or not a strike by the union membership may be lawfully directed against them following takeover.

In short, upon their venture into the bus business, they need an interpretation of 839.221. They need to know what effect that statute may have upon this venture that they are apparently about to undertake. The effect of that statute may be decreed upon consideration of the evidence now — and I emphasize "now" — before the court, and the law applicable thereto.

These doubts will be resolved by this decree. Theoretical doubts will not be resolved. Most important, doubts concerning the relationship now or in the future between the defendants and individuals or management corporations not before this court cannot here be reconciled, nor put to rest. This court has no jurisdiction over the persons or the subject matter in that regard.

Therefore, having carefully considered all of the evidence in the case and the applicable law, the legislative history of Florida Statute 839.221, the intent of the legislature, as manifest by the language of this statute, those facts generally known to the public at the time of the enactment of the statute, constitutional, statutory, and case law prevailing at the time of the enactment of the statute, and the arguments of able counsel of the parties in this case, the court has firmly concluded the following —

1. In the event the plaintiffs take over the bus companies upon the circumstances revealed by the evidence in this case, Florida Statute 839.221 would be inapplicable to any persons employed by the bus companies at the time of takeover. In other words, as the court weighs the evidence, Mr. Pawley "maintains a substantial financial or operating control" within the meaning of sub-section (3) of that statute. Further, such persons who may be employed for so long a period as Mr. Pawley continues to maintain that substantial control would likewise be excluded from the operation of 839.221.

2. Unless clearly authorized to do so by the enactment of legislation, the plaintiffs would not be authorized and are not now authorized to enter into collective bargaining agreements, within the labor relations meaning of the term, with the defendants.

3. Unless clearly authorized to do so by the enactment of legislation, the plaintiffs could not recognize as lawful any strike against the plaintiffs by the defendants. In other words, the statute would be inapplicable to the employees, but there could be neither collective bargaining nor strike.

The court will now discuss its conclusions, listed as 1, 2, and 3 above, and in that discussion will construe 839.221.

Whether or not it is ever actively exercised, the majority bondholder maintains, through his trustee, substantial control — control at least equal to that of any elected or appointed official who may be involved in the operation of the buses. This substantial control — and I add, parenthetically, actually over the management company as well — is control maintained through the relationship of its trustee to certain individuals or organizations which themselves exercise substantial operating control. The control comes about through the method prescribed for appointment and removal of key figures in the operation.

As to conclusions 2 and 3, you gentlemen are all familiar with the Miami Waterworks case. (32 So. 2d 194) The basic Florida statute is recited in it. From a reading of that case and a close study of the statute which we are now construing (F. S. 839.221

does not employ the phrase "collective bargaining"), I am led to the conclusion that in Florida there can be no collective bargaining within the labor relations meaning of the term, and that there is no present authority for the plaintiffs to contract with the defendants.

Florida law and, indeed, the undisputed law in every jurisdiction in this country, is that in the absence of clear, concise, direct legislative authority, unions and their members are denied the right to strike against the government, whether it be federal, state, county, or municipal. The profit system is missing in public employment, public employees owe undivided allegiance to the public employer, and the continued operation of public employment is indispensable to the public interest.

The courts have said that as a general rule collective bargaining has no place in government service. The employer is the whole people. This is a government of law, not men. For the courts to hold otherwise than as I have just explained would be to sanction control of governmental functions not by laws but by men. Such policy, if followed to its logical conclusion, would inevitably lead to chaos.

The defendants have urged throughout this case that in the event the control which is specified in sub-section (3) of the statute is maintained, that 839.221 actually is legislative authority to bargain collectively and to strike. Such is not the case. Authority to strike is not given by implication. Neither is the judiciary delegated the legislative authority to legislate the right to strike upon certain findings of fact before the judiciary. Neither is a private individual or a government corporation or a government entity, such as the Authority here, in position to grant or to deny that right through the avenue of some contractual provision. This is the fatal void in the defendants' case in regard to collective bargaining and the right to strike.

Florida Statute 839.221, not being applicable to the defendants, they are in the exact position as they were in before the statute was passed; that is, no right to bargain collectively, no right to strike, because the statute simply has no applicability to them. They are excluded from the provisions of it under such circumstances as we have in this case.

Therefore, there is nothing for them to fall back upon. But most important, the format of this statute that we are construing is to set up certain disqualifications for employment within the state, county, or municipality. The statute is basically a prohibition against employing certain persons or certain classes of persons.

To construe its inapplicability to the defendants as breathing some legislative authority in them to strike is to say that such could be done by indirection or inference, and such is not the law.

At this point I think it important that the act that we are actually construing is found in the general laws of 1959, the original act. It is very important to note that in the Florida Statutes Annotated the word "section" is used in sub-section (3). In the act the language is, "shall be excluded from the operation of this *act*."

To further construe the statute, pursuant to the plaintiffs' prayer for declaratory decree, sub-section (4) is not applicable to the defendants because the statute is not applicable to them. For clarification, however, it is obvious to the court that (4) was enacted for the purpose of providing for the inclusion of former bus company employees in the retirement programs in the event the county should acquire a public utility system, as distinguished from taking one over with substantial control remaining. Precise legislative authority is needed to accomplish that purpose.

The people who administer these retirement programs have actuarial programs to consider. Before a group of employees is eligible, there must be some legislation on the subject. This is that authority, (4), if a county acquires a bus system, as distinguished from taking one over.

There seems to be no conflict as to the meanings of section 1 and section 2 of the statute.

It appears to this court that the act here being construed, rather than being a document of confusion, as some would make it, is a demonstration of rather unusual foresight on the part of the legislature as a whole. The act, though not so clear and unambiguous as to remove its interpretation from the area of declaratory decree, is not difficult to construe, and this court is confident that the following general construction of the statute is in clear accord with the legislative intent.

First, we must note the distinction between the words "upon the acquisition of" and "is taken over by a county but, in fact, said person maintains a substantial financial or operating control."

You gentlemen may remember that I asked you if you thought there was any distinction there. To acquire in the law is to get as one's own. To acquire something is to possess and control a property acquired. "Acquired" means something vested, not mere possession.

The language used in (3) describes a situation where possession has been had by the purchaser, but complete control has not been had. In other words, (3) anticipates that in a substantial control situation, which you have here, there must be federal recourse available to the bus company employees against the substantial control entity. The legislature of Florida recognized that it cannot legislate away the impact of the statutes passed by Congress, and it recognized that courts of law have no jurisdiction to do so.

The legislature knew that there would be no method of preventing access to the federal agencies and no control over the federal courts, hence the language of sub-section (3).

Interestingly enough, the very language of sub-section (3) is in striking similarity to federal cases and reports of federal agencies which deal with situations where government-operated activities are conducted with substantial control remaining in private employers. The long recognized test on the question of who is the employer is known as the common law control test.

This is the general statutory construction that I am giving you, gentlemen. The legislature recognized that it is entirely conceivable that a union and its membership may not be in position to strike against the government but may be in position to assert certain rights under federal law against the substantial control interest. The legislature recognized in passing (3) that an employee not in position to strike against or to bargain collectively with its governmental master may nevertheless find himself in position to resort to federal recourse against certain supervisory or executive personnel not government employees. It recognized that former public utility employees might be in position to seek federal recourse for mutual aid or protection, absent matters not involving budgetary control. Example: grievances against such supervisory and executive personnel. In other words, it was the intent of the legislature that Florida Statute 839.221 be applicable in a situation where government acquires; that is, possesses and completely controls the operation of a utility.

In that instance employees may not belong to organizations which assert the right to strike against the government and may not themselves assert such right. That class of employees is eligible for civil service benefits. That is what the statute says. That is exactly what it says, absent (3).

Conversely, where substantial control remains, the county may, because the act is not applicable, employ former employees of a utility company, notwithstanding their union membership, because the act is not applicable to them—and notwithstanding

their assertion of the right to strike. This gives them no right to strike against their government because they did not have it before the passage of the statute, but it leaves them in a position to seek federal redress, if such is warranted, against individuals or corporations that may be held, in federal jurisdictions, to be, in fact, their employers.

I think in that connection, gentlemen, that it is important that we read something else from the original statute which is not present to the naked eye in Florida Statutes Annotated. You will notice that in section 1 it says, "No person shall hold office, employment," et cetera, "who participates in any strike or asserts the right to strike against the state, county or any municipality."

From reading Florida Statutes Annotated, the inquisitive individual construing the statute says, "Does that mean any strike —or does that mean any strike against the government?"

The answer is very simple. The title of the act, the original act, reads as follows: "An act relating to membership," et cetera, "in organizations asserting the right to strike, providing for the prohibition of participation in any strike against the state, county, or any municipality."

Although wholly owned government corporations or "authorities" are exempt under the NLRB's employer definition, government contractors are not exempt, even when they are operating a government-owned business and working with government-owned equipment. The contractor and not the government may be the employer if, in fact, the contractor controls personnel and certain labor relations, even though the government may screen the key or supervisory workers.

Under the contractual relationship between Mr. Pawley and Dade County, between Dade County and the management corporation, and upon the evidence presented here, employees not members of the management corporation would be employees of Dade County, but whether or not for some purpose they may ultimately be held in some other forum to be employees of the management company or the substantial control entity is not for the court to know. Neither is it for me to speculate upon that.

Possibly the earliest account of such a situation in NLRB history has to do with the Cosmopolitan Shipping Company in 1937. It was held there that the United States Government in turning over operation and management of government-owned vessels to a private company while contracting to pay actual costs and expenses of the operation had avoided the responsibilities of the employer, of being an employer, and that the exemption of the

government from the operation of NLRB was not meant to apply in cases of a commercial venture of that nature.

In 1943 a company known as the Coploymer Corporation, organized for the operation of a government activity, a government-owned plant, under an agreement with an agency of the United States Government, was held to be an employer within the meaning of the act, where there was nothing in the contract between the company and the government agency which rendered the labor relation of the company, other than those pertaining to supervisory employees, subject to the agency's control.

A similar situation was present and an identical ruling was made in 1951 upon a contract involving the Great Southern Chemical Corporation. However, as I say, whether or not the company contracting with the governmental unit may be an employer or, at least, jointly so with the government, within the meaning of the act, turns upon the particular factual circumstances present in each case. There is nothing before this court on that proposition and no presently justiciable issue—and the management company is not a party to this case.

Further construing the statute, in a general vein, it was, of course, not the legislature's intent that former public utility employees automatically occupy the status and enjoy whatever benefits flow to public employees. The members of the defendant union will not, of course, automatically become government employees upon takeover.

Whether the statute is applicable or not, the one that we are construing, the employees of the former utility company must first choose to become county employees. In a situation where the company itself is acquired within the language of (4), the county must consider the employees eligible for civil service benefits.

Of course, the legislature cannot legislate that a citizen must go to work for the government (that proposition was taken care of in the 1780's in America by a document known as the Constitution of the United States) save, of course, in national emergencies.

Neither can A and B contract that A will sell and B will purchase the manual services and labors of a third person. That proposition was abrogated shortly after a terrible internal conflict, sometimes referred to as the Civil War and sometimes referred to as the War Between the States, depending upon what part of the country one occupies. In other words, it cannot be done contractually, gentlemen, not since the War Between the States.

Having made findings of fact, having construed the statute, and having rendered conclusions of the court on doubts sought to

be resolved by the plaintiffs' prayer for declaratory decree, the court now makes certain observations which must be considered purely as such. They are dicta at best.

The court recognizes full well that its function is not to encourage or to discourage the passage of legislation, not to encourage or discourage the resort to federal boards or jurisdictions, the government operation of public transportation facilities, membership or resignation from unions which assert the right to strike against the government. Its function is not to seek public acceptance of its judgments and decrees. Its function is to stay within its prescribed judicial orbit.

In this instance, it is to resolve bona fide doubts and to construe a statute. I pause here to quote from Justice Brandeis, words which were written forty years ago, which I think are appropriate—"All rights are derived from the purposes of the society in which they exist. Above all rights rises duty to the community. The conditions developed in industry may be such that those engaged in it cannot continue their struggle without danger to the community"—and this is the point I make—"but it is not for judges to determine whether such conditions exist, nor is it their function to set the limits of permissible contest and to declare the duties which the new situation demands. This is the function of the legislature, which while limiting individual and group rights of aggression and defense may substitute processes of justice for the more primitive method of trial by comabt."

The court considers, then, the following remarks appropriate in that their purpose, as I say, is to assure the parties here of an understanding of the construction of the statute. They are made only for that purpose and, are no more than observations.

The court observes that the legislature anticipated that a county may, as the transit authority chairman expressed it, expect and hope that bus company employees who are members of a union that assert the right to strike would accept county employment. In other words, if substantial control exists, the legislature very wisely made this statute inapplicable to the bus drivers employed at the time of the takeover or to be employed. The legislature anticipated that if the statute was inapplicable to those employees, the county would be in position to decide what course to take. I have gone to great pains to say to you that it is none of the court's business what the county does, but the discussion, in my judgment, clarifies the construction of the statute.

The county could do one of several things—It could employ the present bus drivers, should they consent, of course, realizing that there would be no right to strike against the county or to bargain

collectively, but employing them with the knowledge that union members might some day seek some recourse against this substantial control entity in the area of the federal law; or, B, delegate the right to the transit authority to enter into contractual agreement with them (not collective bargaining within the labor sense), such agreement to be within budgetary limitations, timewise as well as dollarwise; or, C, statute 839.221 being inapplicable and no legislative roadblock as to these particular employees, the county may be in position to consider the advisability or lack of it of specific legislative grant in the area of collective bargaining, including or excluding the right to strike; or, D, it may operate the buses through drivers not associated with a union which asserts the right to strike.

It may choose its own employees. The legislature anticipated all this in the drafting of this statute, which is clear and easy to read.

Interestingly enough, whether this court holds that there is or there is not substantial control in this instance would be of little or no consequence in any federal proceeding. Such a ruling here serves the purpose of settling the rights of the county, if it wishes to do so, to employ personnel belonging to a union which asserts the right to strike against the county. Whether or not the employee works for the county, as I have said, is up to him and up to the county under this statute and under this factual situation.

I think it is appropriate to note that the maintenance of substantial control in a circumstance such as ours is not unusual in bond proceedings. State and county governments by constitutional provisions must operate on a balanced budget. These bond agreements and programs are ofttimes helpful to a community as a practical matter. There must be some control to cope with the problem of the natural urge of officeholders to satisfy their constituents. Example: the urge to reroute a bus six blocks off its beaten path to the benefit of a few constituents; the urge to hire more employees than are necessary to be hired for patronage purposes, et cetera. This court merely holds that such a relationship renders the statute inapplicable as to a certain class of employees.

I want to make it clear that the court is not deciding questions regarding the scope or application of county civil service regulations. It is not deciding questions regarding the scope or application of county retirement programs. It is not deciding questions relative to rights or status of the parties should the county take over and find at a later time that Mr. Pawley has negotiated

bonds so as to become a minority bondholder. Those questions have not been raised. They are not presently justiciable.

In summary, gentlemen, (still observations), Dade County may choose to acquire a public utility, vest the control in elected officials, and operate a public utility free from labor relations problems; or it may take over such a utility by contract, with some substantial control remaining in the seller. It may choose to contract with management companies to manage the utility, thereby enjoying the benefits of such arrangement, and also, thereby, living with whatever inconveniences may develop, because state and county governments cannot deprive American citizens of their right to resort to federal boards and courts given them under the authority of the United States Congress. In any event, the people (and that term includes members of the union), the named defendants, and the elected representatives of the people themselves, each has his choice to make under this statute.

It is the prayer of this Court that the choices are wisely made to the benefit of the community as a whole.

*Final decree:* This cause came on to be heard upon plaintiffs' complaint for declaratory decree and for injunctive relief and the answer filed thereto. The prayer for injunctive relief has been withdrawn by plaintiffs. The court has considered the evidence in the cause and has heard and considered the testimony and argument of counsel.

Therefore, this court orders, adjudges and decrees by way of declaratory decree that—

From the testimony presented and the documentary evidence presented, this court finds that in the event the plaintiffs take over the public utility (pursuant to contract in evidence in this cause) now owned and operated by private person, firm or corporation, said person, firm or corporation will maintain, based upon circumstances presently reflected by this record, a substantial financial or operating control. Therefore, the defendant union and its members are excluded from the operation of F.S. 839.221 (and the plaintiffs are not barred from employing the membership of the defendant union).

Plaintiffs are not required by law to offer employment to the members of the defendant union, and the members of the defendant union would not by operation of law (sub-section (4) F.S. 839.221) be included in classified civil service and other benefit provisions and systems of Metropolitan Dade County, Florida, upon consummation of the contractual transaction evidenced by the record in this cause.

Plaintiffs are not authorized by law to enter into a collective bargaining agreement with defendants and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause.

Plaintiffs are not authorized to recognize as lawful any strike directed against them and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause.

Those proceedings had before the court on January 2, 1962, and the oral conclusions reached and announced in open court on that date shall be and hereby are made a part of this final decree. Those remarks, classified as observations and dicta are specifically excluded from the final decree.

Costs of these proceedings to be assessed and taxed upon appropriate motion.